SOLAKIS v ROBERTS

WHITE v EXTRA LABOR POWER OF AMERICA

Docket Nos. 56374, 56375, 56388. Argued May 7, 1975 (Calendar Nos.
8, 9).—Decided September 8, 1975.

Antonion Solakis was awarded workmen's compensation benefits.
The Workmen's Compensation Appeal Board increased the rate
of interest on the awards from 5% to 6%. The Court of
Appeals, J. H. Gillis, P. J., and Bashara and O'Hara, JJ., denied
leave to appeal and remanded to the Workmen's Compensation
Appeal Board for entry of an order to provide 5% interest
(Docket No. 20599). Defendants Miller Lumber Company and
American Mutual Liability Company appeal.

Extra Labor Power of America, a labor broker, assigned plaintiff
Robert White to work at Estan Manufacturing Company. While
he was at work at Estan, three fingers of plaintiff's left hand
were amputated by a punch press. Workmen's compensation
was awarded to plaintiff on the basis of $1.25 per hour, his
wage paid by Extra Labor Power, rather than on the basis of
$1.95 per hour, the amount that Estan paid to Extra Labor
Power for plaintiff's services. The Workmen's Compensation
Appeal Board provided for 5% interest upon plaintiff's award.
The Court of Appeals, Bashara, P. J., and Bronson and Carland,
JJ., affirmed and remanded for a factual determination of
plaintiff's average weekly earnings (Docket Nos. 17017, 17070).
Plaintiff appeals. *Held:*

1. A workmen's compensation award is grounded in contract,
and is not a money judgment. Therefore the rate of interest on
workmen's compensation awards is 5% per annum, the con-
tract rate, and not 6%, the money judgment rate.

2. There is support in the record for the finding that Extra
Labor Power is exclusively liable for benefits.

REFERENCES FOR POINTS IN HEADNOTES
[1] 58 Am Jur, Workmen's Compensation § 484 (supp).
[2] 58 Am Jur, Workmen's Compensation § 64.
[3] 58 Am Jur, Workmen's Compensation § 535.
[4] 58 Am Jur, Workmen's Compensation § 89.
[5, 6] 58 Am Jur, Workmen's Compensation § 308.

3. The case is remanded for a factual determination of White's average weekly earnings. Extra Labor Power received $1.95 per hour on behalf of White, out of which it paid him $1.25 per hour, the rest being out-of-pocket expenses and profit. The profit should not be deducted from White's wage computation. The Workmen's Compensation Appeal Board shall determine that wage between $1.25 and $1.95 per hour which it determines best to serve the objectives of the Workmen's Compensation Act, recognizing the wage paid part-time workers performing the same task, the economic gain to White of transportation provided by ELP, the economic gain accruing to White because of ELP's finding work for him and any other economic gains to him, the temporary nature of the employment, and ELP's out-of-pocket expenses.

54 Mich App 370; 221 NW2d 214 (1974) affirmed.

1. WORKMEN'S COMPENSATION—AWARD—INTEREST.

A workmen's compensation award is grounded in contract, and is not a money judgment; therefore, the interest rate on an award is 5%, the statutory contract rate, and not 6%, the money judgment rate (MCL 438.31, 600.6013).

2. WORKMEN'S COMPENSATION—EXCLUSIVE REMEDY—CONTRACT.

Workmen's compensation benefits are the exclusive remedy against the employer when an employee's injury is within the scope of the Workmen's Compensation Act; the right to an award arises out of the contractual relationship between employers and employees (MCLA 418.131).

3. WORKMEN'S COMPENSATION—APPEAL BOARD—JUDICIAL POWER.

The Workmen's Compensation Appeal Board is not a court and is not possessed of judicial power; it is beyond its power to apply the interest rate on money judgments found in the Revised Judicature Act to a workmen's compensation award (MCL 600.6013).

4. WORKMEN'S COMPENSATION—FINDINGS OF FACT—DUAL EMPLOYERS —LIABILITY FOR COMPENSATION.

Joint liability of employers to pay workmen's compensation does not necessarily follow from a dual employer situation; the determination which employer should pay is a question of fact under the "economic reality" test as well as under the old "right to control" test; where only one of the two employers paid the workman's wages, there was support in the record for a factual finding by the Workmen's Compensation Appeal Board that that employer was liable to pay compensation

benefits, and that finding is conclusive and binding on the Supreme Court.

5. WORKMEN'S COMPENSATION—BENEFITS—WAGE COMPUTATION—LABOR BROKERS.

In computing the hourly wage earned by a workman who was paid $1.25 per hour by a labor broker who received $1.95 per hour from a manufacturer for the workman's services, the difference being out-of-pocket expenses and profits of the labor broker, the broker's profits should not be deducted.

6. WORKMEN'S COMPENSATION—BENEFITS—WAGE COMPUTATION—LABOR BROKERS.

A workmen's compensation case in which the injured employee was paid $1.25 per hour by a labor broker who received $1.95 per hour from a manufacturer for the employee's services is remanded to the Workmen's Compensation Appeal Board for a finding of the employee's wage, which shall be that wage between $1.25 and $1.95 per hour which the board determines best to serve the objectives of the act, recognizing the wage paid part-time workers performing the same task, the economic gain to the employee of transportation provided by the broker, the economic gain accruing to him because of the broker's finding work for him and any other economic gains to him, the temporary nature of the employment, and the broker's out-of-pocket expenses.

*Garvey, Kreis & Silverman, P. C.,* for plaintiff Solakis.

*James, Dark & Craig* (by *Richard J. Craig*), for defendants Charles D. Roberts and Michigan Mutual Liability Company.

*Cholette, Perkins & Buchanan* (by *Edward D. Wells* and *Kenneth L. Block*), for defendants Miller Lumber Company and American Mutual Liability Company.

*Early, Starbuck & Lennon* (by *John T. Peters, Jr.*), for defendants Miller Lumber Company and Employers Mutual of Wausau.

*Kelman, Loria, Downing, Schneider & Simpson* (by *Robert W. Howes),* for plaintiff White.

*Conklin, Benham, McLeod, Ducey & Ottaway, P. C.* (by *Thomas P. Chuhran),* for defendant Estan Manufacturing Company.

M. S. COLEMAN, J. These cases were consolidated to consider the common issue of whether the rate of interest on workmen's compensation awards is 5% or 6% per annum. The question has created a split in the Court of Appeals panels.[1] We find that the Legislature has provided for 5% interest.

Additionally, plaintiff White confronts the Court with the question of whether he is entitled to workmen's compensation based upon his $1.25 per hour wage received from Extra Labor Power of America (ELP) (a labor broker) or upon the $1.95 per hour received by ELP from Estan Manufacturing Company for plaintiff's wage plus ELP's services.

### Solakis

The Workmen's Compensation Appeal Board (WCAB) found 6% interest applicable to plaintiff's award. The Court of Appeals remanded and ordered modification of the award of benefits to provide for interest of 5% per annum from the due

---

[1] *See, also, Gilbert v Reynolds Metals Co,* 59 Mich App 62, 69–70; 228 NW2d 542 (1975) (5% interest); *Morris v Baker Auto Parts,* 57 Mich App 65; 225 NW2d 179 (1974) (6% interest); *Miller v Midwest Foundry Corp,* 57 Mich App 761; 226 NW2d 721 (1975) (6% interest); *Gibbs v Keebler Co,* 56 Mich App 690; 224 NW2d 698 (1974) (6% interest).

In the two most recent decisions, Johnson v Muskegon, 61 Mich App 121; 232 NW2d 325 (released May 27, 1975) and *Holdren v Lease Management, Inc,* 61 Mich App 508; 233 NW2d 59 (released May 30, 1975), the Court of Appeals allowed interest at the rate of 5%, holding 1% in abeyance pending decision in this Court.

date. It further ordered payment of the additional
1% interest held in abeyance pending further
decision.

## White

WCAB provided for 5% interest per annum
upon plaintiff's award. The Court of Appeals af-
firmed.

The *White* matter raises an additional meritori-
ous question growing out of plaintiff's employment
by a "temporary help" or "manpower" labor
agency. Through the efforts of ELP, defendant
worked for Estan Manufacturing Company. He
would report each morning to ELP. From there he
would be transported by the agency to work and
then back to the agency after work. The hours
worked would be noted by Estan each day on a
time sheet and the sheet would be presented to
ELP. Plaintiff was paid by the agency each day at
the hourly rate of $1.25 for his day's work (time
and a half for overtime). Estan paid ELP at the
rate of $1.95 per hour, the difference being used by
ELP for its operational costs, including workmen's
compensation premiums to its carrier and for its
profits. Estan could terminate plaintiff's services
by notifying ELP and controlled the work per-
formed during the day. ELP held the right to hire
and fire plaintiff at any time.

While he was engaged in work at Estan, three
fingers of plaintiff's left hand were amputated
(December 21, 1965). Plaintiff sought workmen's
compensation benefits and on June 7, 1971, the
hearing referee found plaintiff disabled and
awarded compensation on the basis of $1.25 per
hour. Liability was assigned to ELP and its car-
rier, defendant Employers Mutual Casualty Com-
pany. WCAB affirmed. Plaintiff appealed, claiming

that recovery should be based upon $1.95 per hour instead of $1.25. ELP also sought leave, claiming that Estan should be co-liable for payment of the benefits. The Court of Appeals affirmed the WCAB, but remanded for determination of plaintiff's wages paid by ELP.

## I —Interest

Until *Wilson v Doehler—Jarvis Division of National Lead Co,* 358 Mich 510; 100 NW2d 226 (1960), interest had not been allowed on workmen's compensation awards. *Wilson* overruled *Fowler v Muskegon County,* 340 Mich 522; 65 NW2d 801 (1954), which had held that because interest in Michigan was purely statutory and there was no interest provision in the workmen's compensation law, interest could not be awarded.

In *Wilson,* the Court found that although interest is purely statutory, interest could be allowed in cases where no express statute could be invoked. The Court looked to other jurisdictions and found that the right to an award arose out of the contractual relationship between employers and employees. The Court stated in 358 Mich 518–519; 100 NW2d 230:

"In discussing the principle involved in the leading case of *Bourdeaux v Gilbert Motor Co,* 220 Minn 538, 541 (20 NW2d 393, 394) [1945], the court said:

" 'The sole question raised in that case *(Brown v City of Pipestone)* [186 Minn 540; 245 NW 145 (1932)] was * * * "whether or not unpaid installments of compensation bear interest at the legal rate from the date when under the provisions of the compensation act they should have been paid." We there held: " * * * Compensation in this State is a liability arising out of the contract of employment, and the compensation act becomes a part of every contract of employment." We

there further stated: "Here was a contract debt due at the times when the compensation installments should have been paid under the provisions of the act, and we see no reason why it should not, like any other debt, bear interest at the legal rate when it is subsequently decided that the debt existed." ' "

In *Wilson,* the Court also relied on *Parker v Brinson Construction Co,* 78 So 2d 873 (Fla, 1955), wherein the Florida Court also applied a contract theory to determine the rate of interest on workmen's compensation awards.

As was properly stated in *Wilson,* it has long been established that the question of interest in Michigan is purely statutory.[2]

Having determined that the right to an award in workmen's compensation was contractual, the *Wilson* Court found 1948 CL 438.7; MSA 19.4 applicable. Since interest was allowable, the rate was fixed at 5% by virtue of the provisions of 1948 CL 438.51; MSA 19.11, now MCLA 438.31; MSA 19.15(1), which provides in pertinent part:

"The interest of money shall be at the rate of $5.00 upon $100.00 for a year, and the same rate for a greater or less sum, and for a longer or shorter time, except that in all cases it shall be lawful for parties to stipulate in writing for the payment of any rate of interest, not exceeding 7% per annum."

The 5% interest rate was uniformly applied until the WCAB decision in *Maxwell v General Motors Corp, Fleetwood Division,* 1973 WCABO 1075. In *Maxwell,* decided April 30, 1973, the WCAB began to order that 6% interest be paid on such awards. In so ordering, the WCAB relied on MCLA 600.6013; MSA 27A.6013 as amended by

---

[2] *Kermott v Ayer,* 11 Mich 181, 184 (1863); *Mitchell v Reolds Farms Co,* 268 Mich 301, 311; 265 NW 445 (1934).

1972 PA 135, with an effective date of March 30, 1973, which provides in pertinent part:

"Interest shall be allowed on any money judgment recovered in a civil action, such interest to be calculated from the date of filing the complaint at the rate of 6% per year unless the judgment is rendered on a written instrument having a higher rate of interest * * * ."

After *Maxwell,* the Court of Appeals split, with some panels following *Wilson, supra,* and applying a 5% rate of interest and some following *Morris, supra,* and allowing 6% interest.

We wish to restate our position in *Wilson* and, therefore, we affirm those Court of Appeals decisions applying the 5% rate of interest.

When an employee's injury is within the scope of the act, workmen's compensation benefits are the exclusive remedy against the employer. MCLA 418.131; MSA 17.237(131); *Ladner v Vander Band,* 376 Mich 321, 325; 136 NW2d 916 (1965).

In *Tews v C F Hanks Coal Co,* 267 Mich 466, 468–469; 255 NW 227, 228 (1934),[3] this Court stated:

"The compensation act is in derogation of the common law and, therefore, its measure of relief may not be extended beyond its express terms; it is a legislative creation permitting no enlargement by principles of equity or common-law adaptations. It is arbitrary and where it speaks nothing can be added nor changed by judicial pronouncement. It imposes liability upon operatives under its provisions and measures exclusive relief in its own terms."

Thus, it was not by happenstance that this

[3] *Also, see Wagner v LaSalle Foundry Co,* 345 Mich 185, 195; 75 NW2d 866, 871–872 (1956).

Court in *Wilson* grounded the interest recovery concept on a contract theory. Because interest in Michigan is statutory, plaintiffs' arguments sounding in equity are to no avail.

In *Siebert v Northport Point Cottage Owners' Assn,* 378 Mich 661, 680; 148 NW2d 790, 799 (1967), Justice KELLY wrote in a well reasoned dissent:

"Appellee refers to the revised judicature act of 1961, and particularly to section 2921 of Chapter 29 and section 151 of chapter 1 thereof.

"The revised judicature act does not apply to workmen's compensation as is evidenced by the title of the act, which reads in part:

" 'An act to revise and consolidate the statutes relating to the organization and jurisdiction of the courts; * * * the forms and attributes of civil claims and actions; the time within which civil actions and proceedings may be brought in said courts.'

"The words upon which appellee relies in regard to 'judicial power,' which he claims include 'any other agencies,' were eliminated by the 1963 legislature by the enactment of PA 1963 (2d Ex Sess), No 18."[4]

Additionally, this Court has often stated that WCAB is not a "court" and "is not possessed of judicial power". *Modeen v Consumers Power Co,* 384 Mich 354, 360; 184 NW2d 197, 200 (1971).

---

[4] Footnotes 4 and 5 at 378 Mich 661, 680 state:

" 'The judicial power is vested in a single court system consisting of the supreme court, circuit courts, probate courts, justices of the peace, superior court, municipal courts, common pleas courts, recorder's courts, circuit court commissioners, and any other agencies created by the legislature which exercise judicial power.' CLS 1961, § 600.151 (Stat Ann 1962 Rev § 27A.151)."

" 'The judicial power of the state is vested exclusively in 1 court of justice which shall be divided into 1 supreme court, 1 court of appeals, 1 trial court of general jurisdiction known as the circuit court, 1 probate court and courts of limited jurisdiction created by the legislature.' CLS 1961, § 600.151, as amended by PA 1963 (2d Ex Sess), No 18 (Stat Ann 1965 Cum Supp § 27A.151)."

In summary, the unilateral action of WCAB in *Maxwell* attempting to apply the interest rate of 6% found in MCLA 600.6013 was beyond the scope of the powers delegated to that body. This Court's decision in *Wilson* trod the fine line separating the legislative and judicial branches of government.

As this and other jurisdictions have noted, the contract theory is a sound basis upon which to ground the interest on workmen's compensation awards. The concept of a money judgment is totally alien to the policy and philosophy of the workmen's compensation law.

Until the legal interest rate is changed (MCLA 438.31) or the Legislature provides what they have heretofore failed to provide, the interest on workmen's compensation award must remain at 5%.

We affirm the Court of Appeals as to this issue.

## II —COMPENSATION (WHITE)

At the hearings before the referee, the plaintiff testified that during the first six weeks of employment he worked ten hours per day and six days per week and that during the final five weeks, he worked eight hours per day and six days per week.

The referee found plaintiff's average weekly wage to be $60 computed at the rate of $1.25 per hour and fixed his compensation at $40 per week.[5] WCAB affirmed the findings of the hearing referee.[6]

We have not previously spoken to the question of whether the plaintiff's compensation should be determined by reference to the actual monies paid

---

[5] MCLA 418.361; MSA 17.237(361).

[6] The Court of Appeals maintained that the plaintiff's testimony was not borne out by the records of ELP. It must be noted that the records of ELP were never admitted into evidence. There was nothing to refute the plaintiff's testimony in the record.

to him by the employment service, or by reference to the amount paid by the company to the employment firm.

The applicable statute, MCLA 418.371; MSA 17.237(371), provides:

"(1) The weekly loss in wages referred to in this act shall consist of such percentage of the average weekly earnings of the injured employee computed according to the provisions of this section as shall fairly represent the proportionate extent of the *impairment of his earning capacity in the employment in which he was working at the time of the injury,* the same to be fixed as of the time of the injury, but to be determined in view of the nature and extent of the injury. The compensation payable, when added to his wage earning capacity after the injury in the same or another employment, shall not exceed his average weekly earnings at the time of such injury.

"(2) Average weekly wage means the weekly wage earned by the employee at the time of his injury, inclusive of overtime, premium pay, and cost of living adjustment, and exclusive of any fringe or other benefits which continue during disability, but in no case less than 40 times his hourly rate of wage or earning. When it is found that the established normal work week for the employee's classification of employment in the establishment of the employer where the employee suffered a personal injury is less than 40 hours, then the average weekly wage shall be established by multiplying the employee's hourly rate or earning by the number of hours customarily worked in the employee's classification or employment in that place of employment or his actual earned wages, whichever is greater.

"(3) When a hearing referee finds that the employee was employed specifically and not temporarily on a part-time basis, the average weekly wage shall be determined by multiplying the hourly rate or earning by the average number of hours worked in the part-time employment. When it is found that the employee has worked an average of 25 hours or more per week in all

of his current employments, he shall not be considered a part-time employee.

"(4) If the hourly earning of the employee cannot be ascertained, or if no pay has been designated for the work required, the wage, for the purpose of calculating compensation, shall be taken to be the usual wage for similar services where such services are rendered by paid employees.

"(5) Where there are special circumstances under which the weekly wage cannot justly be determined by applying the above provisions, an average weekly wage may be computed by dividing the aggregate earnings during the year prior to the injury by the number of days when work was performed and multiplying such daily wage by the number of working days customary in the employment, but not less than 5." (Emphasis added.)

The question becomes one of plaintiff's "earning capacity in the employment in which he was working".

The plaintiff argues that his "earning capacity" should be measured by what Estan was willing to pay to obtain his services ($1.95 per hour). The plaintiff maintains that this is what he would have received had he been hired directly by the company for that job as a regular employee. Plaintiff additionally argues that if the earnings cannot be clearly ascertained, the "usual wage for similar services", must be used.[7]

Defendant Estan replies that plaintiff's "earning capacity" and "wages" are that which he was paid for the work he was doing ($1.25 per hour). The plaintiff's earning capacity must be ascertained from that which *he* was able to obtain for his services, and not that which *someone else* was willing to pay to obtain them. Defendant Estan submits that the difference between the $1.25

---

[7] MCLA 418.371(4).

amount paid by ELP to plaintiff and the $1.95 paid by Estan to ELP was the result of a contract between the defendants. The difference reflected the costs[8] and profit of ELP and was in no way a fringe benefit inuring to the plaintiff. The defendant maintains that the plaintiff's reliance on the "usual wage for similar services" standard is misplaced herein because this is not a situation where "the hourly earning of the employee cannot be ascertained".[9]

The plaintiff also maintains that ELP was engaged as his agent to find him employment. Thus, plaintiff asserts that the dollars received by ELP for acting as his agent should not be deducted from his average weekly wage.

The Court of Appeals was correct in applying the "economic reality" test[10] to the instant case. Under the criteria espoused in the "economic reality" test, the plaintiff was an employee of both Estan and ELP and thus the principal-agent argument is inapplicable to the instant case.

Although there is a dual employment situation herein, we long have held that joint liability does not necessarily follow from a dual employer situation. *Wing v Clark Equipment Co,* 286 Mich 343; 282 NW 170 (1938).

There it was held that because both employers paid wages to the injured employee, separate awards should issue. In the instant case, only ELP paid wages and therefore the ELP carrier is primarily liable.

As the Court of Appeals noted, the referee and

[8] ELP paid plaintiff's social security and workmen's compensation.

[9] MCLA 418.371(4).

[10] *See Goodchild v Erickson,* 375 Mich 289, 293; 134 NW2d 191 (1965). The factors to be employed are control of a worker's duties, payment of wages, the right to hire and fire, and the right to discipline.

the WCAB found that ELP should be exclusively liable for the payment of benefits.

In *Allen v Kendall Hardware Mill Supply Co,* 305 Mich 163; 9 NW2d 45 (1943), a dual employer situation, the Court held that the determination of which employer should be liable to pay benefits was a question of fact. While *Allen* utilized the old "right to control test", this determination should also be a question of fact under the "economic reality" test. Because only ELP paid plaintiff's wages, there is support in the record for the factual finding, and that finding is conclusive and binding on this Court. *Johnson v Vibradamp Corp,* 381 Mich 388; 162 NW2d 139 (1968); *Hlady v Wolverine Bolt Co,* 393 Mich 368; 224 NW2d 856 (1975).

In plaintiff White, Estan obtained an employee whom it could and did supervise on its premises. Estan was relieved of almost all paperwork and costs incident to employment, including the payment of the employer's share of employment taxes. White was relieved of the obligations of a full-time employee. He also was relieved of expenditures *(e.g.,* transportation) which may represent an economic gain to him.

ELP received $1.95 per hour on behalf of plaintiff White. From this sum, ELP paid White $1.25 per hour and its out-of-pocket expenses (for example, workmen's compensation insurance and employer's share of employment taxes) were deducted and the balance if any was its profit.

We find that ELP's profits should not be deducted from White's wage computation.

We remand to WCAB to determine that wage between $1.25 and $1.95 per hour which WCAB determines best to serve the objectives of the act, recognizing the wage paid part-time workers per-

forming the same task, the economic gain to White of transportation provided by ELP, the economic gain accruing to White because of ELP's finding work for him and any other economic gains to him, the temporary nature of the employment, and ELP's out-of-pocket expenses.

Affirmed and remanded to WCAB for factual determination of plaintiff's average weekly earnings not inconsistent with this opinion.

T. G. KAVANAGH, C. J., and WILLIAMS, LEVIN, and J. W. FITZGERALD, JJ., concurred with M. S. COLEMAN, J.

SWAINSON and LINDEMER, JJ., took no part in the decision of this case.