CITY OF HAMTRAMCK v HAMTRAMCK FIREFIGHTERS
ASSOCIATION

Docket Nos. 66214, 66215. Submitted May 11, 1983, at Detroit.—
Decided August 31, 1983. Leave to appeal applied for.

The City of Hamtramck and the unions representing the city's
firefighters and police officers, the Hamtramck Firefighters
Association, the Hamtramck Ranking Officers Association and
the Hamtramck Fraternal Order of Police, Lodge 109, were
unable to agree as to a collective-bargaining agreement to take
effect July 1, 1979. The unions demanded arbitration under the
fire and police department compulsory arbitration act. After
taking evidence, the arbitration panel, by a 2 to 1 vote, selected
the unions' last best wage offer which gave wage increases of 5-
1/2% for the first year and 6-1/2% for the second and third
years of the contract. The panel also awarded certain cost of
living adjustments, increased pension benefits, and additional
pay for firefighters assigned to emergency medical technician
duty. These increases were given in spite of the city's assertion
that it was unable to pay such increases. The city filed an
action in Wayne Circuit Court, naming the unions and the
members of the arbitration panel as defendants and seeking
review of the arbitration award. The unions filed a separate
action in Wayne Circuit Court, naming the city and members
of the Hamtramck City Counsel as defendants and seeking
enforcement of the arbitration award. The cases were consoli-
dated for review in circuit court. John M. Wise, J., ordered
enforcement of the arbitration award from the date of the
arbitration award to the date of the filing of the complaint for
enforcement of the award pursuant to the statute providing for
interest on verdicts or awards arising in actions based on a
contractual obligation and payment of interest on the award
from the date of filing the complaint for enforcement of the

REFERENCES FOR POINTS IN HEADNOTES
[1-3] 48A Am Jur 2d, Labor and Labor Relations § 1764 *et seq.*
Labor law: right of public employees to strike or engage in work
stoppage. 37 ALR3d 1147.
[4] [No reference]
[5] [No reference]

award to the date of payment pursuant to the interest on a judgment statute. Judge Wise entered partial judgment and ordered that the judgment of damages owed, not including interest, be placed upon the tax rolls of the city. The city appeals. *Held:*

1. The statute providing for compulsory arbitration of disputes concerning contract formation in police and fire departments where strikes are prohibited by law is a constitutional delegation of legislative power.

2. Courts, in reviewing an arbitration award made under the provisions of the statute providing for compulsory arbitration of disputes concerning contract formation in police and fire departments, may neither question the wisdom of the arbitration award nor undertake *de novo* review. Judicial review is limited to determining whether the award exceeds the jurisdiction vested in the arbitration panel, the award is unsupported by competent, material and substantial evidence on the whole record, or the award was procured by unlawful means.

3. The arbitration panel gave the question of the city's ability to pay the weight the panel felt that factor deserved. It is not for the courts to second guess the arbitration panel on the weight to be accorded the various statutory factors nor is the city's ability to pay the determinative factor which must control unless the employees can disprove the assertion that the city lacks the ability to pay. Since it is clear that the evidence concerning all the statutory factors was considered, the circuit court properly affirmed and enforced the arbitration panel's award.

4. Since there is no statutory basis for awarding interest on the arbitration award, the circuit court erred in granting interest.

5. Since the arbitration award is not a judgment, it was error to spread upon the tax rolls of the city the cost of the economic portion of the award.

Affirmed in part, reversed in part.

1. Labor Relations — Arbitration — Police and Fire Departments — Municipal Corporations — Constitutional Law.

The statute which provides for compulsory arbitration of disputes concerning contract formation in police and fire departments, as amended in 1976, is a constitutional delegation of legislative power (MCL 423.231 *et seq.;* MSA 17.455[31] *et seq.*).

2. Labor Relations — Arbitration — Police and Fire Departments — Appeal.

The statute providing for compulsory arbitration of disputes

concerning contract formation in police and fire departments provides a reviewing court with a license neither to consider the wisdom of an arbitration award nor to subject it to *de novo* review; rather, the statute specifically confines the scope of review to awards exceeding jurisdiction, unsupported by competent, material and substantial evidence on the whole record, or procured by unlawful means (Const 1963, art 6, § 28; MCL 423.242; MSA 17.455[42]).

3. LABOR RELATIONS — ARBITRATION — POLICE AND FIRE DEPARTMENTS — APPEAL.

The Legislature has evinced no intention that each "factor" in the statute providing for compulsory arbitration of disputes concerning contract formation in police and fire departments be accorded equal weight; it is the arbitration panel that must decide which particular factors are more important in resolving a certain contested issue and the fact that the arbitrators have not been persuaded by a party's evidence and argument as to certain issues does not mean that they have failed to give each of the eight statutory factors that separate consideration required by law (MCL 423.231 *et seq.;* MSA 17.455[31] *et seq.).*

4. ARBITRATION — LABOR RELATIONS — ECONOMIC ISSUES — INTEREST ON AWARD.

Interest on the economic portion of an arbitration award in a contract-formation dispute involving police and fire departments may not be granted, because there is no statutory provision for it (MCL 423.231 *et seq.,* 438.7; MSA 17.455[31] *et seq.,* 19.4).

5. ARBITRATION — LABOR RELATIONS — ECONOMIC ISSUES — MUNICIPAL CORPORATIONS — TAX ROLLS.

The economic portion of an arbitration award in a contract-formation dispute involving police and fire departments is not a judgment against the municipal corporation within the meaning of the statutory provision authorizing the spreading of the cost of any judgment entered against the municipal corporation on the tax rolls (MCL 600.6093; MSA 27A.6093).

*Bellanca, Beattie, De Lisle, Suchy & Matish* (by *James C. Zeman),* for plaintiff.

*Eugene R. Bolanowski, P.C.* (by *Eugene R. Bolanowski)* for Hamtramck Firefighters Association,

Hamtramck Ranking Officers Association and Hamtramck Fraternal Order of Police.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, and *Jon M. De Horn,* Assistant Attorney General, for Richard Strichartz.

Before: Hood, P.J., and V. J. Brennan and D. S. DeWitt,* JJ.

Per Curiam. The City of Hamtramck is a municipal corporation which employs firefighters and police officers. The firefighters are members of Local 750 of the International Association of Firefighters, and the police officers are members of Lodge 109 of the Fraternal Order of Police and of the Hamtramck Police Ranking Officers Association.

Prior to the June 30, 1979, expiration date of the then in effect collective-bargaining agreement between the city and the unions, the two sides met to negotiate a new agreement. The parties were unable to resolve their disputes, and the existing collective-bargaining agreement expired. On November 28, 1979, the unions made a demand for compulsory arbitration, pursuant to MCL 423.231 *et seq.;* MSA 17.455(31) *et seq.* The arbitration panel consisted of defendants Richard Strichartz, Chairman, George C. Edwards, III, and Dan T. Ryan.

The panel majority issued an opinion and award on December 3, 1980, dissented to by the city's representative, Mr. Edwards. The majority selected the unions' last best offer wage demand and

---

* Circuit judge, sitting on the Court of Appeals by assignment.

granted the unions wage increases in the amount of 5-1/2% for the period of July 1, 1979, to June 30, 1980, retroactive to July 1, 1979; an increase of 6-1/2% for the period July 1, 1980, to June 30, 1981, retroactive to July 1, 1980; and a wage increase of 6-1/2% for July 1, 1981, to June 30, 1982. The unions were also awarded a 20 cent cost of living adjustment (COLA) for the fiscal year July 1, 1979, through June 30, 1980. The city's last best offer on COLA was adopted for the contract years July 1, 1980, to June 30, 1981, and July 1, 1981, to June 30, 1982. The award also granted the unions' demand for increased life insurance benefits and for a per diem of $10 for each day a firefighter is assigned to emergency medical technician duty.

On January 22, 1981, the City of Hamtramck filed suit aginst the unions and the members of the arbitration panel in Wayne County Circuit Court, seeking review of the arbitration panel's award. The unions also filed suit in Wayne County Circuit Court, on March 13, 1981, against the City of Hamtramck and members of the Hamtramck Common Council (hereinafter referred to collectively as the city), seeking enforcement of the arbitration award. The cases were consolidated for review by the circuit court.

After examining the proofs and hearing the arguments of the respective counsel, the trial court issued an opinion upholding the arbitration award and ordered that the arbitration award be implemented by the City of Hamtramck. The order also specified that employees be paid interest on the award from December 3, 1980, through March 13, 1981 (the date of filing of the complaint for enforcement), pursuant to MCL 438.7; MSA 19.4. Affected employees were to receive statutory inter-

est pursuant to MCL 600.6013; MSA 27A.6013 from March 13, 1981, to date of payment.

On October 27, 1981, the trial court issued a partial judgment and amendment to the order of enforcement, which ordered that the judgment of damages owed, not including interest, shall be placed on the tax rolls of the City of Hamtramck for collection, pursuant to MCL 600.6093; MSA 27A.6093. The City of Hamtramck and named members of its Common Council appeal as of right.

The city's first claim is that 1969 PA 312, MCL 423.231 *et seq.;* MSA 17.455(31) *et seq.,* is unconstitutional on its face. In *Detroit v Detroit Police Officers Ass'n,* 408 Mich 410; 294 NW2d 68 (1980), *reh den* 409 Mich 1101 (1980), *app dis* 450 US 903; 101 S Ct 1337; 67 L Ed 2d 326 (1981), the Supreme Court considered and rejected each of the constitutional issues now raised by defendants. Since that decision is the present state of the law in Michigan and binding on this Court, we find defendants' arguments to be without merit.

The city's second claim is that the arbitration panel's award, insofar as it grants wage increases and cost of living adjustments, should be overturned.

1969 PA 312, MCL 423.231 *et seq.;* MSA 17.455(31) *et seq.* (hereafter referred to as Act 312), provides for compulsory arbitration of labor disputes in municipal police and fire departments. Act 312 is provided as an alternative means to striking for the resolution of labor disputes between these groups, with the aim of maintaining the high morale of the employees and the efficient operation of the departments. See MCL 423.231; MSA 17.455(31).

In deciding disputed economic issues, the arbi-

tration panel is governed by §§ 8 and 9 of Act 312. Section 8 provides, in relevant part:

"At or before the conclusion of the hearing held pursuant to section 6, the arbitration panel shall identify the economic issues in dispute, and direct each of the parties to submit, within such time limit as the panel shall prescribe, to the arbitration panel and to each other its last offer of settlement on each economic issue. * * * As to each economic issue, the arbitration panel shall adopt the last offer of settlement which, in the opinion of the arbitration panel, more nearly complies with the applicable factors prescribed in section 9. The findings, opinions and order as to all other issues shall be based upon the applicable factors prescribed in section 9." MCL 423.238; MSA 17.455(38).

The factors in § 9 to be considered in making a determination of the last best offer are:

"[T]he arbitration panel shall base its findings, opinions and order upon the following factors, as applicable:
   "(a) The lawful authority of the employer.
   "(b) Stipulations of the parties.
   "(c) The interests and welfare of the public and the financial ability of the unit of government to meet those costs.
   "(d) Comparison of the wages, hours and conditions of employment of the employees involved in the arbitration proceeding with the wage, hours and conditions of employment of other employees performing similar services and with other employees generally:
   "(i) In public employment in comparable communities.
   "(ii) In private employment in comparable communities.
   "(e) The average consumer prices for goods and services, commonly known as the cost of living.
   "(f) The overall compensation presently received by the employees, including direct wage compensation, vacations, holidays and other excused time, insurance

and pensions, medical and hospitalization benefits, the continuity and stability of employment, and all other benefits received.

"(g) Changes in any of the foregoing circumstances during the pendency of the arbitration proceedings.

"(h) Such other factors, not confined to the foregoing, which are normally or traditionally taken into consideration in the determination of wages, hours and conditions of employment through voluntary collective bargaining, mediation, fact-finding, arbitration or otherwise between the parties, in the public service or in private employment." MCL 423.239; MSA 17.455(39).

The city contends that the arbitration panel majority did not properly consider the factors in § 9 in reaching its conclusion to accept the union's last best offer of settlement. The city argues that the arbitrators (specifically the author of the award, arbitrator Richard Strichartz) did not consider the factor of the city's ability to pay and that, even if he did consider that factor, he did not give it the weight it deserves. In effect, the city argues that once the city established its inability to pay (the unions dispute that this was established), this factor should have been determinative and required the panel to accept the city's last best offer of settlement.

Section 12 of Act 312 provides the scope of judicial review of the arbitration panel's award:

"Orders of the arbitration panel shall be reviewable by the circuit court for the county in which the dispute arose or in which a majority of the affected employees reside, but only for reasons that the arbitration panel was without or exceeded its jurisdiction; the order is unsupported by competent, material and substantial evidence on the whole record; or the order was procured by fraud, collusion or other similar and unlawful means. The pendency of such proceeding for review

shall not automatically stay the order of the arbitration panel." MCL 423.242; MSA 17.455(42).

In *Detroit v DPOA, supra,* after holding Act 312 constitutional, the Court turned to the question of review of the arbitration panel's award. The Court cited § 12 of the act, and stated:

"[T]his section neither provides this Court with a license to consider the wisdom of an arbitration award nor to subject an award to *de novo* review.* * * Rather, the Legislature having confined our scope of review in assessing compulsory, binding arbitration awards, we are statutorily bound to uphold an award if it meets the prescriptions of § 12." *Detroit v DPOA, supra,* p 480.

The Court concluded that §§ 8, 9 and 12 were interdependent, thus requiring joint consideration by a court sitting in review of an Act 312 arbitration panel's award. *Id.,* pp 481-483. The Court then went on to reject the argument the city makes herein:

"One other matter of statutory interpretation needs to be addressed preliminary to our examination of the panel's award. The city seems to argue that the act must be considered unconstitutional if the panel has the freedom to determine which of the § 9 factors are most applicable to a certain case. The apparent foundation for this argument is some perceived repugnance between the concept of assessing a statute's constitutionality on the sufficiency of its standards to guide delegated authority, while simultaneously allowing the recipient of this delegated authority the discretion to weigh these standards within the context of a particular case.

"We disagree with the city's contention. The fact that an arbitral majority may not be persuaded by a party's evidence and argument as to certain items does not

mean that those arbitrators failed to give the statutory factors that consideration required by law. The Legislature has neither expressly nor implicitly evinced any intention in Act 312 that each factor in § 9 be accorded equal weight. Instead, the Legislature has made their treatment, where applicable, mandatory on the panel through the use of the word 'shall' in §§ 8 and 9. In effect then, the § 9 factors provide a compulsory checklist to ensure that the arbitrators render an award only after taking into consideration those factors deemed relevant by the Legislature and codified in § 9. Since the § 9 factors are not intrinsically weighted, they cannot of themselves provide the arbitrators with an answer. It is the panel which must make the difficult decision of determining which particular factors are more important in resolving a contested issue under the singular facts of a case, although, of course, all 'applicable' factors must be considered. Our comment in *Midland Twp v State Boundary Comm,* 401 Mich 641, 676; 259 NW2d 326 (1977), is here apposite.

" 'Merely because some criteria were factually inapplicable or were found by the commission to be of less importance than other criteria does not mean that the commission "ignored" relevant criteria. The commission may regard a particular criterion to be of decisive importance outweighing all other criteria.' " *Detroit v DPOA, supra,* pp 483-484.

It is clear from a reading of the arbitrators' opinion that the factor of the city's ability to pay was carefully considered by the panel. The majority of the panel gave this factor the weight it felt it deserved. We agree with the trial court that this decision by the arbitrators should not be "second guessed" by the courts. Certainly, this Court should not act as a "super legislature" and effectively amend Act 312 by holding that the ability of the city to pay (§ 9[c]) should be the determinative factor in compulsory arbitration under Act 312. Such a decision would result in a burden of proof

being imposed upon the employees to disprove a city's assertion of the inability to pay. It is apparent from the arbitration panel's opinion and the trial court's decision that the arbitrators and trial court considered a large amount of evidence regarding all of the § 9 factors. The decision of the trial court enforcing the arbitration panel's economic award is affirmed.

The city next raises the issue of whether the trial court may award the unions interest for loss of the use of funds when ordering enforcement of the arbitration panel's economic award.

The trial court based its award upon two separate statutes. For interest from the date of the arbitration award through the date of filing of the complaint for enforcement, statutory interest pursuant to MCL 438.7; MSA 19.4 was ordered. This statute provides:

> "In all actions founded on contracts express or implied, whenever in the execution thereof any amount in money shall be liquidated or ascertained in favor of either party, by verdict, report of referees, award of arbitrators, or by assessment made by the clerk of the court, or by any other mode of assessment according to law, it shall be lawful, unless such verdict, report, award, or assessment shall be set aside, to allow and receive interest upon such amount so ascertained or liquidated, until payment thereof or until judgment shall be thereupon rendered; and in making up and recording such judgment, the interest on such amount shall be added thereto, and included in the judgment." MCL 438.7; MSA 19.4.

Interest from the date the unions filed their complaint for enforcement of the award was ordered pursuant to MCL 600.6013; MSA 27A.6013, which provides in relevant part:

"(1) Interest shall be allowed on a money judgment recovered in a civil action, as provided in this section.

\*   \*   \*

"(4) For complaints filed on or after June 1, 1980, interest shall be calculated from the date of filing the complaint to the date of satisfaction of the judgment at the rate of 12% per year compounded annually unless the judgment is rendered on a written instrument having a higher rate of interest. In that case interest shall be calculated at the rate specified in the instrument if the rate was legal at the time the instrument was executed. The rate shall not exceed 13% per year compounded annually after the date judgment is entered."

The Supreme Court addressed this issue in *Detroit v DPOA, supra,* pp 499-502. There, the Court held:

"The Act 312 arbitration award is not a 'money judgment recovered in a civil action'. MCL 600.6013, as part of the Revised Judicature Act of 1961, does not apply to compulsory interest arbitration in the public sector. The preamble to the Revised Judicature Act states its concern, instead, to be with such matters as the 'organization and jurisdiction of the courts' and the 'forms and attributes of civil claims and actions'. Our reasoning in the analogous context of disallowing an interest claim on a workers' compensation award made under MCL 600.6013 is here valid. *Cf. Solakis v Roberts,* 395 Mich 13; 233 NW2d 1 (1975). An Act 312 arbitration panel is not 'a court', 'is not possessed of judicial power' and the concept of a money judgment is 'totally alien to the policy and philosophy' of Act 312 which looks to the expeditious and effective resolution of critical-service public sector labor disputes. 395 Mich 21-22.

"We also find MCL 438.7 to be an inappropriate vehicle for the granting of interest. \*   \*   \*

"\*   \*   \* [A]n Act 312 arbitration proceeding is not 'founded' on a contract, but instead has as its very

purpose the *making* of a contract. * * * Act 312 is not
dependent on an already existing contractual relation-
ship between employer and employee for its existence.
Indeed, § 9 of the act expressly provides in its introduc-
tory phrase that it must be considered even '[w]here
there is no agreement between the parties'. Further-
more, as in the present case, an Act 312 award often
will not be issued by an arbitration panel until the
parties' previous collective bargaining agreement (or
statutorily imposed Act 312 contract) has already ex-
pired.

"Nor do we find entirely persuasive the argument
that the statutorily imposed Act 312 contract can itself
serve as the 'contract' contemplated by the terms of
MCL 438.7. The Act 312 contract, as issued by a panel,
is not, as required by MCL 438.7, one that has been
executed to the extent that an amount of money is
liquidated or ascertained. Further, an Act 312 proceed-
ing cannot be 'founded' on a contract since its very
purpose is to make a contract.

"In sum, we can find no statutory provision under
which to grant interest on the economic portion of the
panel's award." *Id.,* pp 500-502.

Therefore, we find that the trial court erred in
ordering interest, and that part of the trial court's
order is reversed.

The final issue raised by the city is whether the
trial court erred in ordering the City of Ham-
tramck to spread on its tax rolls, pursuant to MCL
600.6093; MSA 27A.6093, the arbitration panel's
economic award.

MCL 600.6093; MSA 27A.6093 provides, in rele-
vant part:

"(1) Whenever judgment is recovered against any
township, village, or city, or against the trustees or
common council, or officers thereof, in any action prose-
cuted by or against them in their name of office, the
clerk of the court shall, on the application of the party
in whose favor judgment is rendered, his attorney,

executor, administrator, or assigns, make and deliver to the party so applying a certified transcript of the judgment, showing the amount and date thereof, with the rate of interest thereon, and of the costs as taxed under the seal of the court, if in a court having a seal. The party obtaining the certified transcript may file it * * * with the assessing officer or officers of the city or village, if the judgment is against a city or village. The supervisor or assessing officer receiving the certified transcript or transcripts of judgment shall proceed to assess the amount thereof with the costs and interests from the date of rendition of judgment to the time when the warrant for the collection thereof will expire upon the taxable property of the township, city, or village upon the then next tax roll of such township, city, or village, without any other or further certificate than the certified transcript as a part of the township, city, or village tax, adding the total amount of the judgment to the other township, city, or village taxes and assessing it in the same column with the general township, city, or village tax."

Although there is no Michigan case which has addressed the specific question of whether an Act 312 arbitration award is a "judgment" for purposes of MCL 600.6093; MSA 27A.6093, we agree with the defendants that the Supreme Court's language in *Detroit v DPOA, supra,* regarding interest awards under MCL 600.6013; MSA 27A.6013, can also be used with § 6093, and leads to the conclusion that the trial court's order to spread the arbitration panel's economic award on its tax rolls was erroneous.

As hereinbefore explained, the Supreme Court held in *Detroit v DPOA, supra,* pp 499-502, that an Act 312 arbitration award is not a "money judgment" for purposes of § 6013. In reaching this conclusion, the Court pointed out that § 6013, "as part of the Revised Judicature Act of 1961, does not apply to compulsory interest arbitration in the

public sector". *Detroit v DPOA, supra,* p 500. The Supreme Court distinguished between court orders enforcing an Act 312 arbitration award and money judgments which are the result of litigation originating in court. Section 6093 is also part of the Revised Judicature Act, and also uses the word "judgment" recovered against a city. The award herein is the result of arbitration, not court originated litigation. We believe, therefore, that the spirit of the Supreme Court's decision in *Detroit v DPOA, supra,* mandates the reversal of the trial court's order.

In conclusion, the Act 312 arbitration panel's award is affirmed. However, the trial court's award to the unions of interest for the loss of use of the funds when ordering enforcement of the arbitration panel majority's economic award was improper and is reversed. In addition, the trial court erred in ordering the City of Hamtramck to spread on its tax rolls the arbitration panel's economic award. That part of the trial court's order is also reversed.

Affirmed in part and reversed in part.