## TOWNSEND v M-R PRODUCTS, INC

Docket No. 85281. Argued May 10, 1990 (Calendar No. 4). Decided
September 28, 1990. Rehearing denied 437 Mich 1202.

Debra Townsend was awarded workers' compensation benefits in
March of 1982 for injuries sustained in the course of her
employment with M-R Products, Inc. Pending appeal, the de-
fendant was ordered to pay seventy percent of the weekly
award, but by July, 1982, had tendered only one compensation
payment. The wcab thereafter dismissed the defendant's ap-
peal because of its failure to make the required payments. In
December of 1982, the plaintiff sought a penalty award against
the defendant, and a hearing referee ordered the defendant to
pay $1,500 for its failure to comply. The wcab affirmed. When
the adjudicated payments were not made, the plaintiff again
sought penalties, filing a number of copies of her first petition
with a different date on each copy. In May of 1985, a hearing
referee ordered the defendant to pay $22,500 in penalties, a
$1,500 penalty for each of the fifteen petitions filed. The wcab
set aside all but one of the $1,500 penalty awards, finding that
because it was unable to ascertain from the language of the
petitions the specific weekly periods in which the defendant
had failed to make payments, only one petition alleging late or
improper payments was deemed to have been filed. The Court
of Appeals, MacKenzie, P.J., and Beasley and M. G. Harrison,
JJ., reversed and remanded in an opinion per curiam, reinstat-
ing the award of $22,500, finding that the plaintiff was entitled
to collect multiple penalties since the defendant had chosen to
withhold payments after receiving several petitions (Docket No.
103297). The defendant appeals.

In an opinion by Justice Levin, joined by Chief Justice Riley
and Justices Brickley and Griffin, the Supreme Court *held*:

No more than $1,500 in penalties may be added to an award
of benefits and statutory interest where weekly compensation

REFERENCES

Am Jur 2d, Workmen's Compensation § 658.
Tort liability of worker's compensation insurer for wrongful delay
or refusal to make payments due. 8 ALR4th 902.

benefits or accrued weekly benefits are not paid within thirty days of becoming due and payable.

1. Section 801(2) of the Workers' Disability Compensation Act provides that if weekly compensation benefits or accrued weekly benefits are not paid within thirty days after becoming due and payable, $50 per day is to be paid to the worker for each day over thirty days that the benefits are not paid, up to a total of $1,500. When weekly compensation benefits remain unpaid, they are moved out of the category of weekly compensation benefits into accrued weekly benefits. Weekly compensation and accrued weekly benefits are subcategories of benefits. Thus, $50 per day is required to be added for each day in which the benefits are not paid whether unpaid for weekly compensation or accrued weekly benefits or both. The provision that not more than $1,500 in total may be added pursuant to the subsection includes both unpaid weekly compensation benefits and unpaid accrued weekly benefits. Construed in the context of the entire subsection, this permits a maximum penalty of $1,500 to be levied against an employer or insurer for delinquent or unpaid compensation benefits.

2. A reading of § 801(2) that would entitle a worker to a penalty of $1,500 per week would result in payment of $78,000 annually, in addition to benefits and statutory interest. The rationale of *DeKind v Gale Mfg Co,* 125 Mich App 598 (1983), that such a reading is necessary because a single $1,500 penalty would not deter employers or insurers from delaying payment of benefits because they would withhold benefits, invest them, and thereby realize a return much greater than the $1,500 penalty, ignores that ten percent interest is payable on all late payments pursuant to § 801(6) from the date each payment is due.

3. When the $1,500 penalty provision was added in 1977, the workers' compensation act did not provide for the payment of interest. In 1960, however, the Supreme Court held that interest at the legal rate of five percent per annum was payable on a judgment entered by the circuit court on a workers' compensation award. Since that decision, interest was required to be paid by employers and insurers at five percent per annum on workers' compensation awards without regard to whether a judgment had been sought from or entered by a circuit court. In 1981, the Legislature amended the act to provide a rate of twelve percent per annum because it decided, in light of then-current market interest rates, that interest of five percent encouraged employers and insurers to delay paying workers' compensation benefits. There would have been no cause for

such legislative concern, however, if the $50/$1,500 limitation truly meant that a $78,000 per year penalty was required for late payment, and, thus, no need to increase the interest rate from five percent to twelve percent to forestall delay in payment of benefits.

4. In this case, no more than $1,500 may be added for all the weeks involved.

Reversed.

Justice CAVANAGH, joined by Justices BOYLE and ARCHER, dissenting, stated that MCL 418.801(2); MSA 17.237(801)(2) allows the imposition of a penalty upon an employer for each week or period of weeks that compensation payments to a worker are unpaid. Because the plaintiff did not seek a penalty for each week, but only sought affirmance of the referee's original award, it is not necessary to decide whether she was required, after filing the original petition, to continue filing petitions as a prerequisite to collecting penalty payments. The defendant was provided adequate notice.

173 Mich App 15; 433 NW2d 374 (1988) reversed.

WORKERS' COMPENSATION — FAILURE TO PAY BENEFITS — PENALTY.

No more than $1,500 in penalties may be added to an award of workers' compensation benefits and statutory interest where weekly compensation benefits or accrued weekly benefits are not paid within thirty days of becoming due and payable (MCL 418.801[2]; MSA 17.237[801][2]).

*Timothy J. Bott Law Offices, P.C.* (by *Timothy J. Bott*), for the plaintiff.

*Walton, Smith, Phillips & Dixon, P.C.* (by *Geoff G. Smith*), for the defendant.

Amici Curiae:

*Conklin, Benham, Ducey, Listman & Chuhran, P.C.* (by *Thomas P. Chuhran* and *David J. Berge*), for Michigan Self-Insurers' Association.

*Mark Granzotto, Monica Linkner,* and *Charles P. Burbach* for Michigan Trial Lawyers Association.

LEVIN, J. Section 801(2) of the Workers' Disabil-

ity Compensation Act[1] provides that if weekly compensation benefits or accrued weekly benefits are not paid within thirty days after becoming due and payable, $50 per day shall be paid to the worker for each day over thirty days the benefits are not paid, and that "[n]ot more than $1,500.00 in total may be added pursuant to this subsection."

We hold that no more than $1,500 may be added for all the weeks involved.

I

Townsend injured her back while working at M-R Products, Inc. She filed for workers' compensation benefits and obtained an open award of $61 per week. M-R Products, apparently neither insured for compensation nor properly qualified as a self-insurer, failed to pay benefits to Townsend from the fall of 1983 through the middle of 1985.[2]

Townsend filed penalty petitions pursuant to § 801(2) for the delinquent payments. Fifteen of the petitions[3] were deemed to have been properly filed, and $22,500 in penalties, $1,500 for each petition, was awarded against M-R Products. The WCAB reduced the award to $1,500.[4] The Court of

---

[1] MCL 418.801(2); MSA 17.237(801)(2).

[2] M-R Products was apparently experiencing financial difficulties. M-R Products also apparently failed to pay benefits during the latter part of 1982. A penalty petition was filed pursuant to § 801(2) in December, 1982, and a $1,500 penalty was awarded in April, 1983. This $1,500 penalty appears to have been incorporated in a circuit court judgment for $19,457.91 entered against M-R Products in June, 1984, which was paid.

[3] Of the fifteen properly filed petitions, one was for one week. The others covered time periods ranging from two weeks to six months.

Although at least fifteen petitions were filed, M-R Products had received only two petitions before the first day of the hearing. The hearing was adjourned to provide M-R Products with copies of the other petitions and time to respond.

[4] The WCAB, citing *DeKind v Gale Mfg Co,* 125 Mich App 598; 337

Appeals reinstated the $22,500 award. 173 Mich App 15, 16; 433 NW2d 374 (1988).

II

In *DeKind v Gale Mfg Co,* 125 Mich App 598, 606; 337 NW2d 252 (1983), the Court of Appeals held that a worker may obtain an award of $1,500 for each period for which compensation benefits were not paid *and* for which the worker filed a petition under § 801(2).[5]

The dissent concludes that a worker may obtain $1,500 for each week that benefits are delinquent or unpaid, and specifically declines to rule on "*DeKind*'s petition-filing requirement."[6]

The dissent construes the last sentence of § 801(2) providing that not more than $1,500 in total may be added, in isolation from the rest of that subsection.

Section 801(2) provides:

> If *weekly compensation benefits or accrued weekly benefits* are not paid within 30 days after becoming due and payable, in cases where there is not an ongoing dispute, $50.00 per day shall be added and paid to the worker for each day over 30 days in which the benefits are not paid. Not more than $1,500.00 in total may be added pursuant to

---

NW2d 252 (1983), found that Townsend had failed to file separate petitions for each period of delinquency. See text accompanying n 5.

[5] In *DeKind, supra,* p 606, the employer, a bankrupt self-insurer, failed during a period of about five years to make regular benefit payments to the worker. The worker filed a single penalty petition. The WCAB, affirming the decision of the referee, awarded a $1,500 penalty. The Court of Appeals affirmed.

The Court, responding to the worker's argument that § 801(2) provides a $1,500 penalty for *each* delinquent payment, held that the penalty provision applies to each period in which benefits are not paid *and* for which the worker has "filed a petition for a hearing on the nonpayment." *Id.*

[6] *Post,* p 512.

this subsection. [MCL 418.801(2); MSA 17.237(801)(2). Emphasis added.][7]

The subsection refers to both "weekly compensation benefits" and "accrued weekly benefits." When "weekly compensation benefits" remain unpaid they are moved out of the category of "weekly compensation benefits" into "accrued weekly benefits." Weekly compensation and accrued weekly benefits are subcategories of "benefits." Thus, $50 per day is required to be added for each day "in which the *benefits* are not paid" whether unpaid for weekly compensation *or* accrued weekly benefits or both.

The last sentence of § 801(2), providing that "[n]ot more than $1,500.00 in total may be added pursuant to this subsection," includes both unpaid weekly compensation benefits and unpaid accrued weekly benefits.[8] Construed in the context of the

---

[7] Before the enactment of 1985 PA 103, this subsection encompassed not only weekly benefits or accrued weekly benefits, but also "medical bills, or travel allowance." Before the 1985 amendment, delinquent or unpaid compensation benefits, medical bills, or travel allowances all triggered the penalty provision with a $1,500 limitation. The 1985 amendment eliminated the words "medical bills, or travel" from § 801(2), and added § 801(3) which provides for an additional $1,500 for nonpayment of medical bills or travel allowance:

> If medical bills or travel allowance are not paid within 30 days after the carrier has received notice of nonpayment by certified mail, in cases where there is no ongoing dispute, $50.00 or the amount of the bill due, whichever is less, shall be added and paid to the worker for each day over 30 days in which the medical bills or travel allowance are not paid. Not more than $1,500.00 in total may be added pursuant to this subsection.

[8] Section 801(2), as originally enacted by 1977 PA 302, provided that "[i]f *weekly compensation benefits, accrued weekly benefits,* medical bills, or travel allowance are not paid within 30 days after becoming due and payable in cases where there is an ongoing dispute, $50.00 per day shall be added and paid to the worker for each day over 30 days in which the *compensation,* medical bills, or travel allowance are not paid." 1981 PA 195 changed "compensation" to "benefits." (Emphasis added.)

entire subsection in which it is embedded, the last sentence of § 801(2) provides a maximum $1,500 penalty that may be levied against an employer or insurer for delinquent or unpaid compensation benefits owing to a worker.

### III

Under the dissent's reading of § 801(2), if payment of benefits were delayed for a year, a worker would be entitled to an award of $1,500 per week, $78,000 annually, in addition to the benefits and statutory interest.

The dissent would adopt the *DeKind* rationale that a single $1,500 penalty would not deter employers or insurers from delaying payment of benefits. The dissent further states that "[t]o believe that a maximum penalty of $1,500 would deter the majority of employers from failing to pay compensation benefits is naïve, to say the least."[9]

*DeKind* also argues, and the dissent similarly contends, that there is an investment potential awaiting the employer or insurer who would deliberately withhold payment of benefits. The argument is that if an employer were to withhold benefits for a number of years it could invest the benefits and earn "much more than $1,500 from investments . . . ."[10]

The argument ignores that ten percent interest is payable pursuant to § 801(6)[11] from the date each payment is due on all late payments. In the instant case, Townsend's benefits, at $61 per week, provide compensation of $3,172 a year. If M-R

Rather than repeat the phrases "weekly compensation benefits," and "accrued weekly benefits," the drafters used the shorter "compensation"/"benefits" to encompass both.

[9] *Post,* p 510.

[10] *DeKind, supra,* p 605.

[11] See n 15 and the accompanying text.

Products invested $3,172, one year of benefits, at twelve percent interest, then, having in mind that ten percent interest must be paid pursuant to § 801(6), it would be over *twenty years* before M-R Products netted $1,500.[12]

IV

When the $1,500 penalty provision was added in 1977, the workers' compensation act did not provide for the payment of interest. In 1960, however, this Court had held that interest at the legal rate of five percent per annum was payable on a judgment entered by the circuit court on a workers' compensation award.[13] Since that decision, interest was required to be paid by employers and insurers at five percent per annum on workers' compensation awards without regard to whether a judgment had been sought from or entered by a circuit court.[14]

In 1981, the Legislature amended § 801(5) to provide: "When weekly compensation is paid pursuant to an award of a hearing referee, the board, or a court, interest on the compensation shall be paid at the rate of 12% per annum from the date each payment was due, until paid."[15]

---

[12] It appears that the maximum benefit payable under the workers' compensation act is currently $427 per week, $22,204 per year. If that sum were invested at the two percent interest differential, it would take over three years to net $1,500.

[13] This Court held that the circuit court was authorized to allow the legal rate of interest (five percent) when it enters a judgment on a compensation award pursuant to part 3, § 13 of the act (MCL 413.13; MSA 17.187, subsequently reenacted as § 863 of the present act, MCL 418.863; MSA 17.237[863]). *Wilson v Doehler-Jarvis Div of Nat'l Lead Co,* 358 Mich 510; 100 NW2d 226 (1960).

[14] See *Drake v Norge Div, Borg-Warner Corp,* 367 Mich 464; 116 NW2d 842 (1962); *Solakis v Roberts,* 395 Mich 13, 22; 233 NW2d 1 (1975).

[15] 1981 PA 194, MCL 418.801(5); MSA 17.237(801)(5). Subsequently, the interest rate was reduced to ten percent, and the quoted language became subsection (6) of § 801. 1985 PA 103.

The interest rate was increased from five percent to twelve percent because the Legislature decided, in light of then current market interest rates, that interest of five percent encouraged employers and insurers to delay paying workers' compensation benefits. There would, however, have been no cause for such legislative concern if the $50/$1,500 limitations truly meant that $78,000 a year was required to be paid for late payment, and, thus, no need to increase the interest rate from five percent to twelve percent to forestall delay in payment of benefits. Clearly, the Legislature did not understand that it "intended" that $78,000 a year was to be paid for late payment.

We hold that no more than $1,500 may be added for all the weeks involved.

RILEY, C.J., and BRICKLEY and GRIFFIN, JJ., concurred with LEVIN, J.

CAVANAGH, J. (*dissenting*). Defendant, M-R Products, Inc., appeals from a decision of the Court of Appeals which reversed a Workers' Compensation Appeal Board reduction in penalties owed by defendant employer. I would affirm the portion of the Court of Appeals decision holding that MCL 418.801(2); MSA 17.237(801)(2)[1] of the Worker's

---

[1] MCL 418.801(2); MSA 17.237(801)(2) provides:

If weekly compensation benefits or accrued weekly benefits are not paid within 30 days after becoming due and payable, in cases where there is not an ongoing dispute, $50.00 per day shall be added and paid to the worker for each day over 30 days in which the benefits are not paid. Not more than $1,500.00 in total may be added pursuant to this subsection.

This provision was amended by 1985 PA 103, which deleted prior reference to medical bills and travel allowance, and created § 801(3), which allows for imposition of penalties for failure to pay those expenses.

Disability Compensation Act allows the imposition of multiple penalties for an employer's failure to pay weekly compensation benefits.

I

Plaintiff filed a claim for workers' compensation benefits in October 1979, alleging that she had injured her back in April 1979 while lifting boxes for her employer. In March 1982, a hearing referee granted plaintiff an open award.

Defendant M-R Products appealed to the WCAB. Plaintiff also appealed, seeking an adjustment in the amount of the award. While the appeal was pending, defendant was ordered to pay plaintiff seventy percent of the weekly award, pursuant to § 862 of the act. Defendant tendered one compensation payment covering the period of February 3, 1982, through April 9, 1982. In July 1982, plaintiff notified the WCAB that she had not received any subsequent payments, and the WCAB dismissed defendant's appeal on August 26, 1982, because of its failure to make the required payments.

Having received no further payments, plaintiff filed a petition on December 14, 1982, seeking a penalty award against defendant. On April 28, 1983, a hearing referee ordered defendant to pay $1,500 in penalties for defendant's failure to comply with the March 11, 1982, award of benefits.

Defendant appealed and requested a hearing to dispute the award of the penalty payment. On February 10, 1984, the WCAB affirmed the $1,500 penalty award.

Despite this ruling, defendant still failed to make the adjudicated payments. Plaintiff again sought penalties for nonpayment against defendant, this time filing a number of copies of her

first petition with a different date on each copy.[2]
Each petition stated:

> This petition filed for the sole purpose of re-
> questing penalty payments upon the failure of the
> defendant to make payment in accordance with
> the decision of the Administrative Law Judge
> dated 2/3/82 and mailed from the Bureau [of
> Worker's Compensation] on 3/11/82.

In May 1985, defendant submitted an answer to
plaintiff's multiple penalty petitions, and a hear-
ing was held. As a result, the hearing referee
ordered defendant to pay $22,500 in penalties to
plaintiff.[3]

Defendant appealed to the WCAB,[4] which set
aside all but one of plaintiff's $1,500 penalty
awards. The WCAB determined that since there
were no stipulations by the parties or trial testi-
mony to support the specific enumerated periods
in plaintiff's petitions, plaintiff failed to carry her
burden of proof by a preponderance of evidence.

The WCAB panel relied on *DeKind v Gale Mfg
Co,* 125 Mich App 598; 337 NW2d 252 (1983), lv
den 418 Mich 852 (1983), and noted that in *De-
Kind,* the Court warned that the penalty provision
was not designed as a windfall to injured workers,

---

[2] Plaintiff also filed a complaint in Manistee Circuit Court in 1984,
seeking payment from defendant. The court entered an opinion and
judgment stating that defendant owed plaintiff $19,457.91 as of
June 9, 1984.

According to plaintiff's attorney, petitions were not filed while the
case was in the circuit court, about a year and a half. This time lapse
is reflected in the petitions received by the bureau on September 14,
1984 (covering the period from April 16, 1984, to August 13, 1984),
and on February 25, 1985 (covering the period from August 20, 1984,
to January 21, 1985).

[3] The Court of Appeals opinion reflects a schedule of petitions filed
by plaintiff which formed the basis for each $1,500 penalty assess-
ment. 173 Mich App 15; 433 NW2d 374 (1988).

[4] 1987 WCABO 1263.

but as a measure to ensure prompt benefit payments. The panel emphasized *DeKind's* pronouncement that the $1,500 penalty provision only applied to

> "each period in which compensation benefits are not paid and for which an injured worker has filed a petition for a hearing on the nonpayment. The filing of the petition will put the employer on notice that the worker is seeking not only the missed payment, but also the penalty." [1987 WCABO 1263, 1264, citing *DeKind,* 125 Mich App 606. Emphasis deleted.]

According to the WCAB, the intent of *DeKind* was to encourage plaintiffs to file penalty petitions for the specific weekly periods in which the benefits were not paid, "not merely [to] file the same xeroxed petition, which did not specify any weekly period but only changed the signatory date, as was done in the instant case."[5] The panel said it was unable to ascertain, from the language in the petitions, which specific weekly period defendant failed to make payment.[6] The panel also found that several petitions were received by the bureau in "bundles" and time-stamped the same day. Thus, the panel concluded:

> In the instant case plaintiff did not file a penalty petition every time a payment was missed, instead she filed one nonspecific petition several times. We, therefore, reach the same conclusion as did the *DeKind,* Court; plaintiff having filed only one

---

[5] 1987 WCABO 1264.

[6] Clauses in the petitions indicating that plaintiff sought a penalty provided in similar manner:

> Penalty Petition received by the Bureau 10/10/83 covers payments overdue from 8/15/83 through 9/5/83. The maximum penalty of $1,500.00 is due.

petition alleging late or improper payments is
entitled to only one penalty. [*Id.,* p 1265.]

The Court of Appeals reversed, focusing on
whether the WCAB's application of § 801(2) was
erroneous under the *DeKind* analysis.

Recognizing that, in *DeKind,* the defendant was
ultimately responsible for paying only one $1,500
penalty, the Court nevertheless determined that
the WCAB had applied *DeKind* in an "overly nar-
row fashion, exalting form over substance." 173
Mich App 15, 22; 433 NW2d 374 (1988). The plain-
tiff there had filed only one petition alleging late
or improper payments, in contrast to plaintiff in
the instant case, who submitted some fifteen peti-
tions for penalty payments.

The Court stated that the purpose of the petition
requirement in the statute is to protect employers
by providing them with notification of an em-
ployee's intent to seek a penalty for each week
that the due compensation payment is late. While
the $1,500 provision applies to each period in
which the compensation benefits are not paid, to
trigger that entitlement, the employee needs to file
a petition to put the employer on notice that the
worker is seeking the penalty for that particular
period.

Accordingly, the Court of Appeals reinstated the
referee's $22,500 award, finding that since defen-
dant had chosen to withhold payments after re-
ceiving several of plaintiff's petitions, plaintiff was
entitled to collect the multiple penalties.

II

The key issue before the Court today is whether
§ 801(2) allows a $1,500 penalty for each late
weekly payment, or imposes a one-time maximum

penalty of $1,500, despite the number of compensation payments missed by an employer. Plaintiff Townsend argues that the penalty applies to each late payment; defendant M-R Products responds that $1,500 is the maximum penalty that can be levied against it. I agree with the plaintiff's position, finding it to be supported by statutory language, legislative intent, and practical considerations.

In *DeKind,* the Court of Appeals confronted interpretation of the § 801(2) penalty issue for the first time. Reciting the statute, the Court found that it did not refer to a " 'once-in-a-lifetime' " penalty, but rather to the *weekly* compensation benefits that were due. *Id.* at 605. Furthermore, the Court reasoned, defendant's contention that the statute is limited to a $1,500 maximum contradicted the Legislature's intent to encourage prompt benefits payments by employers by enacting a meaningful financial cost for failure to do so. A $1,500 limit could be minuscule compared to the potential cost of paying out workers' compensation benefits for months, or even years. The money saved by the employer could be invested in other, self-profitable ways, the Court noted, concluding that the Legislature would not have wanted to reward an employer who has violated, or continued to violate, the law.

I agree with the *DeKind* Court on this prong of its analysis: that § 801(2) allows imposition of multiple penalties. The statute unquestionably refers to "*weekly* [7] compensation benefits," which supports plaintiff's contention that each week of nonpayment incurs penalties. As the Court recognized: "Under the plain language of § 801 the penalty

---

[7] See also § 801(1): "Compensation shall be paid *promptly* and directly to the person entitled . . . . Thereafter compensation shall be paid in *weekly* installments." (Emphasis supplied.)

provision is to ensure that compensation is paid promptly and directly to the person entitled thereto." *DeKind* at 605.

The majority nonetheless finds that the maximum amount of penalties allowed is $1,500, which applies to both unpaid weekly and "accrued" weekly benefits—accrued being those payments which the employer never tendered. Therefore, no matter how many weeks have been missed, all past-due payments become lumped together as "accrued" benefits, eligible for only one $1,500 penalty award.

The problem with this interpretation, again, is apparent. If an employer misses paying benefits one week, it can simply either pay the $1,500 due at the end of sixty days and not concern itself with paying penalties thereafter, or it can sit back for months or years without rendering a single benefit, knowing that the most it must pay for violating an award order each week is $1,500.

The majority's holding today will allow employers to circumvent worker's compensation obligations towards aggrieved workers with alarming ease. The incentive to provide an aggrieved worker with *prompt* compensation payments, as noted in § 801(1), is virtually nonexistent. To believe that a maximum penalty of $1,500 would deter the majority of employers from failing to pay compensation benefits is naïve, to say the least.

The majority appears to find objectionable the possibility that a worker whose benefits were delayed one year might ultimately be entitled to thousands of dollars in penalties under my interpretation of § 801(2). Assuming that the employer, during this year, has not disputed the claim in an appeal (during which time the imposition of penalties is precluded, *Charpentier v Canteen Corp,* 105 Mich App 700, 705; 307 NW2d 704 [1981]), I agree

that potentially hefty penalty accumulations are possible. However, considering that such a large penalty award undoubtedly reflects the fact that an employer has flagrantly violated its obligation to pay its worker on dozens and dozens of occasions for periods spanning at least two months, this financial repercussion is not harsh or disproportionate.

The majority also points to the fact that, pursuant to § 801(6), interest may be levied at ten percent per year on an award from the date each payment is due until it is paid. This indicates both that 1) defendants such as M-R Products would amass little financial gain from retaining benefit payments due to the statutorily required interest payment, and 2) the Legislature increased the interest rate a few years ago out of concern that employers not delay compensation payments. This interest assessment, states the majority, would not be needed if the Legislature had intended to permit $1,500 for every late benefit payment.

I disagree. The purposes, functions, and policy concerns behind the interest provision of § 801(6) and the penalty provision of § 801(2) are separate and distinct.

Interest on past-due payments is generally imposed, not as a punishment to employers, but because the employer has benefited from the use of money determined to be due the employee, and the employee had to do without it. *Drake v Norge Div, Borg-Warner Corp,* 367 Mich 464, 468; 116 NW2d 842 (1962). On the other hand, the § 801(2) penalty assessment is designed to ensure that aggrieved workers receive prompt compensation. See *McAvoy v H B Sherman Co,* 401 Mich 419, 455; 258 NW2d 414 (1977) (" 'The object of the Workmen's Compensation Act is to provide compensation to persons suffering a disability arising

from their employment. Such compensation, to be effective, obviously must be provided promptly. So the act provides.' ") The steep $50 a day penalty per unpaid weekly benefit constitutes a sharp stimulus to sluggish employers or insurers to be punctual and timely in compensation payments.

Although the *DeKind* Court held that a worker may collect more than $1,500 under § 801(2), it also noted a limitation: the worker must file with the bureau a penalty petition for every week that a payment is missed. Thus, the Court determined that the penalty provision *only applies* to "each period in which compensation *benefits are not paid and* for which an injured worker has *filed a petition* for a hearing on the nonpayment." *Id.* at 606. (Emphasis supplied.)

Although I agree, and would so hold, that the last sentence of § 801(2) entitles an aggrieved employee to collect up to $1,500 for each delinquent or unpaid weekly benefit, I do not today speak to the propriety of *DeKind*'s petition-filing requirement, and need not address that issue due to the procedural history of this case.

Here, plaintiff Townsend sought penalty payments in the WCAB and Court of Appeals only for the penalty petitions she filed in the bureau. The referee's award of $22,500, reinstated by the Court of Appeals, was arrived at by multiplying each of plaintiff's fifteen petitions by the $1,500 penalty amount. Plaintiff did not file a petition for each week that defendant failed to pay her, as required by *DeKind;* all but one of the petitions requested a penalty for periods encompassing several weeks.[8] Because she did not seek a penalty for each week, but sought only affirmance of the referee's original

---

[8] For instance, the bureau received one petition from plaintiff on September 14, 1984, covering overdue payments from April 16, 1984, through August 13, 1984.

award, it need not be decided here whether plaintiff was required, after filing her initial § 801(2) petition, to continue filing petitions as a prerequisite to collecting penalty payments. Consequently, I express no opinion relating to the second prong of the *DeKind* analysis.

Nevertheless, since the instant plaintiff did file multiple petitions, I will consider the issue whether she was properly awarded penalties on the basis of the petitions submitted.

The WCAB found that plaintiff's petitions were insufficiently specific to support the award of multiple penalties. The panel deemed the petitions fatally deficient because they failed to specify the particular week plaintiff was due compensation and did not receive it. Like the Court of Appeals, I reject this rationale.

The panel reasoned that plaintiff was entitled to only a single penalty award because she filed "one nonspecific petition several times," which, in essence, was the same as having filed only one petition. However, just the opposite is true. The order issued by the hearing referee reveals that petitions were filed by plaintiff and received by the bureau from September 1983 to May 1985. In reality, each petition recorded in the referee's schedule (and reproduced in the Court of Appeals opinion) was noted as being received by the bureau in each case no longer than a few days following expiration of the thirty-day nonpenalty period[9] after which the $50 daily penalty commenced.

Defendant argues that it did not have sufficient notice because specific weeks were not delineated in plaintiff's petitions. That contention is without merit. Here, plaintiff filed successive petitions beginning in 1983 to enforce the referee's 1982

---

[9] MCL 418.801(2); MSA 17.237(801)(2).

decision requiring defendant to pay weekly benefits. There is no question that defendant was provided with adequate notice during its years of dealing with plaintiff, and knew both that its compensation payments to her were late or not forwarded at all.[10]

As the Court below noted:

> *In this case, however, plaintiff [Townsend] has consistently complained about late payments and has continuously notified defendant of its missed payments and her intent to seek a penalty. . . .* [173 Mich App 22. Emphasis supplied.]

This defendant had more than ample notice, and its continued failure to meet its obligation to this employee can generously be described as scandalous.

On the basis of the foregoing analysis, I would hold that § 801(2) allows the imposition of a penalty upon an employer for each week or period of weeks that compensation payments to a worker are unpaid, and affirm that portion of the Court of Appeals holding.

BOYLE and ARCHER, JJ., concurred with CAVANAGH, J.

---

[10] *The Court:* Mr. Smith [defendant's attorney], were you served by the Bureau with any petitions . . . .

*Mr. Smith:* To the best of my knowledge I have received notices and I have been served with . . . .