*In re* APPROXIMATELY FORTY ACRES IN TALLMADGE TOWNSHIP

Docket No. 188886. Submitted March 12, 1997, at Grand Rapids. Decided
     May 13, 1997, at 9:20 A.M. Leave to appeal sought.

   The Department of Natural Resources, at the request of the Attorney
   General, petitioned the Ottawa Circuit Court pursuant to subsec-
   tion 20138(2) of the Natural Resources and Environmental Protec-
   tion Act, MCL 324.20138(2); MSA 13A.20138(2), seeking a superpri-
   ority lien in favor of the state for all past and future costs associ-
   ated with the state's response activity on a parcel of contaminated
   property comprising approximately forty acres located in
   Tallmadge Township owned by respondents Howard and Leona
   Fenske and on which respondent Jack Dykstra Excavating, Inc.,
   has a construction lien. Following a hearing, the court, Edward R.
   Post, J., granted the lien. Jack Dykstra Excavating, Inc., appealed.
      The Court of Appeals *held*:
      1. If in the Attorney General's opinion a standard lien pursuant to
   subsection 20138(1) is insufficient to protect the interest of the
   state in recovering response costs at a facility, the Attorney Gen-
   eral may seek a superpriority lien pursuant to subsection 20138(2)
   by petitioning the circuit court to render an opinion regarding the
   necessity of the subsection 20138(2) superpriority lien. Following a
   hearing regarding the petition, as provided in subsection 20138(3),
   the court must make an independent decision whether a standard
   lien under subsection 20138(1) would be insufficient and whether a
   superpriority lien under subsection 20138(2) is appropriate. The
   court did exercise its discretion in this case.
      2. The court properly allowed the superpriority lien to secure
   future response costs. Subsection 20138(2) allows a superpriority
   lien to be ordered to protect the state's interest in recovering
   "response costs" at a facility. MCL 324.20101(1)(ff); MSA
   13A.20101(1)(ff) defines such costs as "all costs incurred in taking
   or conducting a response activity, including enforcement costs."
   "Response costs" are appropriately interpreted as all costs that will
   be incurred by the Department of Natural Resources.
      3. The court did not err in granting a lien on the entire forty-acre
   parcel. The Legislature's broad definition of a "facility" in MCL
   324.20101(1)(o); MSA 13A.20101(1)(o) indicates that, as a general

rule, if hazardous substances are located on a part of the property, a lien may be placed on the entire, legally described, parcel of land. Each situation must be analyzed case by case.

4. The effect of enforcement of the subsection 20138(2) superpriority lien on the defenses available to Jack Dykstra Excavating, Inc., is irrelevant to this case.

5. The petition seeking the imposition of the lien was not an "action" to recover response activity costs to which the statute of limitations applicable to an action to recover response costs applies.

Affirmed.

1. LIENS — NATURAL RESOURCES AND ENVIRONMENTAL PROTECTION ACT — HAZ-
ARDOUS SUBSTANCES — RESPONSE COSTS.

   The Attorney General may seek a superpriority lien pursuant to sub-
   section 20138(2) of the Natural Resources and Environmental Pro-
   tection Act to protect the interest of the state in recovering
   response costs at a facility containing hazardous substances where,
   in the Attorney General's opinion, the standard lien pursuant to
   subsection 20138(1) of the act is insufficient; following a hearing
   regarding the petition for the superpriority lien, the circuit court
   must make an independent determination regarding whether a
   standard lien would be insufficient to protect the state's interest
   and whether a superpriority lien is necessary (MCL 324.20138[1],
   [2], [3]; MSA 13A.20138[1], [2], [3]).

2. LIENS — NATURAL RESOURCES AND ENVIRONMENTAL PROTECTION ACT —
RESPONSE COSTS.

   The Natural Resources and Environmental Protection Act allows a
   superpriority lien to be ordered to protect the state's interest in
   recovering "response costs" at a facility and defines such costs as
   "all costs incurred in taking or conducting a response activity,
   including enforcement costs"; "response costs" are the equivalent
   of all costs that will be incurred by the Department of Natural
   Resources    (MCL    324.20101[1][ff],    324.20138[2];    MSA
   13A.20101[1][ff], 13A.20138[2]).

3. LIENS — NATURAL RESOURCES AND ENVIRONMENTAL PROTECTION ACT —
FACILITY.

   A lien pursuant to the Natural Resources and Environmental Protec-
   tion Act generally may be placed on an entire, legally described,
   parcel of land to secure the state's interest in recovering the
   response costs at a facility that contains hazardous substances, but
   each situation must be analyzed case by case to determine whether
   the lien should be placed on the entire parcel of property contain-

ing the facility (MCL 324.20101[1][o], 324.20138[2]; MSA 13A.20101[1][o], 13A.20138[2]).

4. LIMITATION OF ACTIONS — NATURAL RESOURCES AND ENVIRONMENTAL PROTECTION ACT — LIENS — ACTIONS TO RECOVER RESPONSE COSTS.

A petition by the Attorney General seeking a superpriority lien pursuant to the Natural Resources and Environmental Protection Act to protect the interest of the state in recovering response costs at a facility containing hazardous substances is not an action to recover response activity costs to which the statute of limitations applicable to an action to recover response costs applies (MCL 324.21038[2]; MSA 13A.20138[2]).

*Frank J. Kelley*, Attorney General, *Thomas L. Casey*, Solicitor General, and *Gary L. Finkbeiner*, Assistant Attorney General, for the Department of Natural Resources.

*Visser & Bolhouse* (by *Donald R. Visser*), for Jack Dykstra Excavating, Inc.

Before: HOEKSTRA, P.J., and MURPHY and SMOLENSKI, JJ.

MURPHY, J. Appellant appeals as of right the trial court's order imposing a lien on the property in question in favor of the state. We affirm.

This case involves interpretation of the Natural Resources and Environmental Protection Act (NREPA), MCL 324.101 *et seq.*; MSA 13A.101 *et seq.* Particularly MCL 324.20138; MSA 13A.20138, which provides in relevant part:

(1) All unpaid costs and damages for which a person is liable under [MCL 324.20126; MSA 13A.20126] constitute a lien in favor of the state upon a facility that has been the subject of response activity by the state and is owned by that person. A lien under this subsection has priority over all other liens and encumbrances except liens and encumbrances recorded before the date the lien under this subsection is recorded. A lien under this subsection arises when

the state first incurs costs for response activity at the facility for which the person is responsible.[1]

(2) If the attorney general determines that the lien provided in subsection (1) is insufficient to protect the interest of the state in recovering response costs at a facility, the attorney general may file a petition in the circuit court of the county in which the facility is located seeking either or both of the following:

(a) A lien upon the facility subject to response activity that takes priority over all other liens and encumbrances that are or have been recorded on the facility. [2]

The property at issue in this case is one of four adjoining parcels of land, used previously as a landfill, owned by Howard and Leona Fenske. The three other parcels are located in Kent County and are not at issue in the instant matter. Appellant, Jack Dykstra Excavating, Inc., has a construction lien, in excess of $300,000, on the parcel at issue for excavating work performed on the site. As a result of the landfill operation, the parcel is contaminated. The Department of Natural Resources petitioned the trial court, seeking a superpriority lien in favor of the state for all past and future costs associated with response activity on the parcel. At the time of the petition, costs amounted to $33,000, and testimony at the hearing regarding the petition indicated that total costs may exceed $1,000,000. Following a hearing, the trial court granted the lien.

---

[1] A lien pursuant to subsection 1 will be referred to as such, or as a "standard lien."

[2] A lien pursuant to subsection 2(a) will be referred to as such, or as a "superpriority lien."

I

First, appellant claims that the trial court improperly interpreted the NREPA as leaving the decision whether to impose a superpriority lien solely to the discretion of the Attorney General. Appellant argues that in cases such as this it is improper for a trial court not to exercise discretion and to simply accede to the will of the Attorney General. We agree that the trial court must arrive at its own conclusion and not simply accede to the will of the Attorney General, but disagree with appellant's characterization of the trial court's actions in this case.

We interpret MCL 324.20138(2); MSA 13A.20138(2) to mean that if, *in the Attorney General's opinion,* a lien pursuant to subsection 1 is insufficient, the Attorney General may seek a superpriority lien pursuant to subsection 2 by petitioning the circuit court to render *its opinion* regarding the necessity of the superpriority lien. We consider the fact that the statute provides that a superpriority lien can be obtained only following a hearing regarding the petition, MCL 324.20138(3); MSA 13A.20138(3), to implicitly bestow discretion upon the trial court regarding the propriety of the superpriority lien. A lien pursuant to subsection 1 does not require a petition to be filed or a hearing to be held, and because the Legislature placed such requirements on obtaining a superpriority lien pursuant to subsection 2, we must construe them to have some meaning. See *Frank v William A Kibbe & Associates, Inc,* 208 Mich App 346, 350-351; 527 NW2d 82 (1995). In our opinion, if the trial court had no discretion, the petition and hearing requirement would become superfluous. We therefore conclude that the Legislature intended the petition and hearing require-

ment to act as a check on the authority and discretion of the Attorney General by allowing the circuit court to make an independent determination regarding whether a lien under subsection 1 would indeed be "insufficient to protect the interest of the state in recovering response costs at a facility . . . ."

In this case, our review of the record does not lead us to the conclusion that the trial court simply acceded to the will of the Attorney General and did not exercise its own discretion. A hearing was held with regard to the petition, and testimony concerning the condition of the property and the projected cost to the state was presented. During the hearing, the trial court asked the petitioner precisely why the Attorney General was of the opinion that a standard lien would be insufficient. Thereafter, the trial court concluded, on the basis of the evidence presented, that a superpriority lien was, in its words, "appropriate and necessary." We find no error requiring reversal.

II

Next, appellant claims that the trial court erred in allowing the superpriority lien to secure future response costs. We disagree.

MCL 324.20138(2); MSA 13A.20138(2) allows a superpriority lien to be ordered to protect the state's interest in recovering "response costs" at a facility. MCL 324.20101(1)(ff); MSA 13A.20101(1)(ff) defines such costs as "all costs *incurred* in taking or conducting a response activity, including enforcement costs." (Emphasis added). Appellant argues that the Legislature's use of the past tense indicates an intent to refer to only those costs that have already been

incurred and does not include potential future costs. We disagree.

The primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature. *Rowell v Security Steel Processing Co*, 445 Mich 347, 353; 518 NW2d 409 (1994). The first step in determining intent is the language of the statute. *House Speaker v State Administrative Bd*, 441 Mich 547, 567; 495 NW2d 539 (1993). If the plain and ordinary meaning of the language is clear, judicial construction is normally neither necessary nor permitted. *Lorencz v Ford Motor Co*, 439 Mich 370, 376; 483 NW2d 844 (1992). However, if a literal construction of a statute would produce unreasonable and unjust results that are inconsistent with the purpose of the statute, the court may depart from a literal construction. *Rowell, supra* at 354. In addition, statutory language should be construed reasonably, keeping in mind the purpose of the act. *Dep't of Social Services v Brewer*, 180 Mich App 82, 84; 446 NW2d 593 (1989).

In this case, appellant advocates an interpretation of the definition of "response costs" equivalent to "all costs [that have been] incurred [by the DNR]." However, we are of the opinion that a more appropriate interpretation of the definition is the equivalent of "all costs [that will be] incurred [by the DNR]."

A standard lien under MCL 324.20138(1); MSA 13A.20138(1) arises when the state "first incurs costs for response activity," and covers "[a]ll unpaid costs and damages" of that response activity. Because "evaluation" is a "response activity," a standard lien is likely to arise early in the remediation process. In addition, because "response activity" also includes "interim response activity" and "remedial action," and

there is no requirement that a standard lien be for a stated amount, see MCL 324.20138(1); MSA 13A.20138(1), we are of the opinion that a standard lien was intended to attach early in the remediation process and to remain attached to cover all costs incurred throughout the process. Therefore, because it is clear from the statutory scheme that the Legislature intended the superpriority lien to provide greater protection of the state's interest, we consider it to be inconsistent with the Legislative intent to hold that a superpriority lien does not cover future response costs, or costs that will be incurred by the state throughout the process.

Also, the superpriority lien provision was originally enacted as part of the Environmental Response Act (ERA), former MCL 299.601 *et seq.*; MSA 13.32(1) *et seq.*[3], which was enacted, in part, in response to the problems facing the state in regard to the exorbitant cost of cleaning up polluted facilities, the trouble encountered getting those responsible for the contamination to pay for the cleanup, and the resulting financial burden that was being placed on the taxpayers to cover for those responsible. See House Legislative Analysis, HB 5878, October 17, 1990, pp 1-2. We consider our interpretation to further this response by allowing the state to undertake the necessary remediation activities, secure in its knowledge that its financial interest will be protected.

---

[3] The specific provision was MCL 299.616a; MSA 13.32(16a). In 1995, the Legislature amended the ERA and recodified it within the NREPA. See *Cipri v Bellingham Frozen Foods , Inc,* 213 Mich App 32, 36; 539 NW2d 526 (1995).

III

Next, appellant claims that the trial court erred in applying an overly broad definition of the term "facility." Appellant argues that placing a lien on the entire forty-acre parcel was improper because not all forty acres were contaminated. We disagree.

MCL 324.20101(1)(o); MSA 13A.20101(1)(o) defines "facility" as "any area, place, or property where a hazardous substance . . . has been released, deposited, disposed of, or otherwise comes to be located." The plain language of this definition and the terms used evidences an intent to broadly define "facility" to encompass virtually any location that contains hazardous substances. The issue raised by appellant is whether a lien should be placed on an entire parcel of property where hazardous substances are located when not all that property is contaminated. As a result of the intent displayed by the Legislature broadly defining "facility," we are of the opinion that, when speaking in terms of "property" as real property, as a general rule, if hazardous substances are located on a part of the property, a lien may be placed on the entire, legally described, parcel of land. However, because we are also of the opinion that such a broad interpretation of the term may, in some instances, lead to inequitable and absurd results, courts must analyze each situation case by case.

In the case at bar, the parcel of land defined by the trial court as the facility was approximately forty acres. The hearing testimony indicated that the soil that had been contaminated had been moved to only one corner of the parcel. However, the testimony also indicated that there was no way to know if the sub-surface soil was contaminated because the area is

under landfill. Also, the ground water under twenty to thirty acres of the parcel was contaminated. On the basis of the evidence presented, we find no error in the trial court's granting of a lien on the entire forty-acre parcel.

IV

Next, appellant asks if it has any defenses if the state chooses to enforce its superpriority lien. This question arises out of a statement in the trial court's opinion on reconsideration that "[a]ny inequity that would otherwise result from the Court's imposition of a subsection (2)(a) lien is more than offset by the numerous defenses available to Dykstra pursuant to sections 20126 and 20127 of NREPA [MCL 324.20126; MSA 13A.20126 and MCL 324.20127; MSA 13A.20127]." Appellant argues that those sections, and consequently the defenses listed therein, do not apply to appellant. We consider an answer to appellant's question to be premature.

Our review of the record indicates that the statements made by the trial court were dicta, and not essential to its decision to grant appellee's lien. Therefore, even assuming the trial court was incorrect, reversal is not warranted. The issue before the trial court was whether a superpriority lien was proper, not whether appellant has any defenses available if the state chooses to enforce such a lien. As previously discussed, the trial court applied the correct standard in making its decision to grant the lien. While an arguably relevant consideration to the trial court's decision was the existence of liens currently on the property, under the statute, the effect of a superpriority lien on those prior liens is not a relevant

consideration. The statute does not require the trial court to "balance the equities" as appellant suggests, but simply to determine whether a standard lien is "insufficient to protect the interest of the state in recovering response costs at the facility . . . ." While we realize the harshness of the superpriority lien provision on prior lienholders, we are constrained by the clear language of the statute to apply it as written. When enacting new laws, the Legislature is charged with knowledge of existing laws and is presumed to have considered the effect of the new laws on all existing statutes. *Walen v Dep't of Corrections*, 443 Mich 240, 248; 505 NW2d 519 (1993). Therefore, we must presume that when enacting the NREPA, the Legislature was aware of the Construction Lien Act, MCL 570.1101 *et seq.*; MSA 26.316(101) *et seq.*, and the effect the superpriority lien provision would have on construction liens, and chose to give priority to superpriority liens. The effect of enforcement of the superpriority lien and the defenses available to appellant is irrelevant to the instant matter.

V

Last, appellant claims that the imposition of the superpriority lien was an "action" to recover response costs and was therefore barred by the statute of limitations, which appellant argued below is set forth in what is now MCL 324.20140(2); MSA 13A.20140(2), which provides "the limitation period for filing actions . . . ." The trial court ruled that this was not an "action" to recover response activity costs, but simply a petition seeking the imposition of a lien; therefore, the statute of limitations pertaining to

actions to recover response activity costs did not apply. We agree with the trial court.

A lien is a security interest for money owed by one party to another, see *Walworth v Wimmer*, 200 Mich App 562, 564; 504 NW2d 708 (1993), and is separate from an underlying cause of action, see, e.g., *Vorrath v Garrelts*, 49 Mich App 142, 147; 211 NW2d 536 (1973). In this case, a lien was imposed on the property to secure payment of the cost of response activity. Although a court imposing a lien impliedly grants money to the lienholder, see *Walworth, supra*, we do not consider the petition seeking a superpriority lien to be an action to recover response activity costs. The petition was simply an attempt to secure payment of such costs until the state files the underlying action seeking to recover the actual cost of the response activity. The statute of limitations will become an issue when that cause of action is filed, and if that cause of action is not timely filed, the superpriority lien will be unenforceable, see MCL 324.20138(6); MSA 13A.20138(6). In other words, the petition seeking a superpriority lien and an action to recover response costs are two different things, and if imposed, the superpriority lien may continue until the underlying action to recover response costs is barred by the statute of limitations.

Affirmed.